IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KRISSY SANCHEZ,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CIERRA RASH, et al.,<br><br>　　　　Defendants. | Cause No. CV 17-156-BLG-SPW-TJC<br><br>FINDINGS AND<br>RECOMMENDATION OF U.S.<br>MAGISTRATE JUDGE<br>(Defendants Harrington,<br>McCullough, and Fridel) |

Plaintiff Krissy Sanchez filed this action in November 2017, challenging defendants' actions in connection with the care and custody of her children. Defendant Corbit Harrington moves for summary judgment on grounds of prosecutorial immunity. Defendant Laura McCullough moves for dismissal because Sanchez has indicated she does not intend to proceed against McCullough. Defendant Fridel moves for judgment on the pleadings. He asserts that he is not a state actor; or, if he is a state actor, he is entitled to qualified immunity; and that Sanchez has not adequately pled a constitutional violation against him.

**I. Defendant Harrington's Motion for Summary Judgment**

Harrington moves for summary judgment on grounds that he is protected by prosecutorial immunity. Sanchez responded to his motion on August 20, 2019

1

(Doc. 54; Doc. 56 at 1–45), and Harrington replied on August 28, 2019 (Doc. 61).

## A. Sanchez's Supplement and Statement of Disputed Facts

Following the reply, Sanchez filed a "supplement" to her response, including a statement of disputed facts (Doc. 64) on September 5, 2019. The supplement was not properly filed and the statement of disputed facts was untimely. *See* D. Mont. L.R. 7.1(d)(1)(B)(i), (D), 56.1(b).

The supplement contains allegations that Harrington "fails to train or reprimand or hold accountability for the illegal actions committed" by social workers, Pl. Supp. (Doc. 64) at 3, and that "Harrington and his office" or "the county attorney bypassed all legal avenues obtained ex parte hearings and orders and fail[] to notify the court and all family members hides the fact that [family members] are present and capable of managing their family during crisis." I*d.* Sanchez also alleges other acts by Harrington in the statement of disputed facts. *See, e.g.*, Statement (Doc. 64) at 7 ¶¶ 10 [serially 11], 12; *id.* at 7–8 ¶¶ 13–15. These allegations are not reflected in the complaint or amended complaint and are not properly before the Court. Sanchez also discusses actions by Defendants Lauwers, McCave, Taylor, and Cunningham. They have not filed a motion for summary judgment.

Therefore, Sanchez's supplement and statement of disputed facts should be stricken in their entirety. They will not be further considered here.

### B. Merits of the Motion for Summary Judgment

#### 1. Summary Judgment Standards

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

#### 2. Prosecutorial Immunity

Prosecutorial immunity protects the function of a prosecutor or State's attorney in the judicial process. Immunity "is not grounded in any special esteem

for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Malley v. Briggs*, 475 U.S. 335, 342 (1986)). "Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually" for hundreds of cases. *Imbler v. Pachtman*, 424 U.S. 409, 425–26 (1976).

Because immunity is designed to protect a function, it applies to all of counsel's actions and decisions—right or wrong, fair or unfair—that are "intimately associated with the judicial phase" of the State's involvement with a criminal defendant, or a taxpayer, or, in Sanchez's case, a parent. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–71 (1993). It applies when a deputy county attorney makes sound legal decisions that lead to a good outcome or that are adopted by a judge and affirmed by an appellate court. It also applies when a deputy county attorney makes bad decisions. *See, e.g.*, *Imbler*, 424 U.S. at 416 (describing allegations against prosecutor). Regardless of whether the acts are good or bad, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an

advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273.

Although the word "prosecutor" is typically associated with criminal cases, "prosecutorial immunity" extends to Harrington's functions here because "the critical decision to institute proceedings to make a child a ward of the state is functionally similar to the prosecutorial institution of a criminal proceeding." *Miller v. Gammie*, 335 F.3d 889, 898 (9th Cir. 2003) (en banc); *see also Meyers v. Contra Costa County Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987).

### 3. Application

In her Complaint, Sanchez alleges:

> Corbit Harrington signed off on an affidavit for emergency removal + TLC [temporary legal custody by the State] with no preponderance of evidence full of she-said information. No bodily damage no marks left on children as clearly stated in petition. No bruising no physical injurys not current situation no life threatening removal needed. He signed a unconstitutional removal with evidence in petition showing a unconstitutional seizure of child proof in petition that YCSO forcefully entered my home with no warrant after social worker saw child was fine. No complaint to the condition of child upon investigation. No bodily harm to older child upon interview and petition shows older child is doing very well in the private school and doesn't want to leave it.
> . . .
> Ceirra rash and the dept then filed for custody of my son while keeping pertinent information out of the affidavate that would have shown the whole picture[.] . . .
> When I took the dept evidence of the 4th of July showing my family was fine that my daughter just didn't want pulled out of a boarding school and my other daughter was pissed off helping her to lie they removed that date from petition to lie and make it look like an

>
> ongoing situation in my home.
> . . .
> [T]he dept petition says I don't leave marks on my child by one of there callers there was more they could have done other then showing up and forcefully taking my child . . . .
> . . .
> My son and daughter has now been tied up in hearings that have been continued and removed from my care based on that emergency court order for removal based on the depts. illegal removal violating fundamental rights and illegal seizures[.]

Compl. (Doc. 2) at 14, 17, 18.

Initially, the Court found that Sanchez stated a claim against Harrington because she alleged he "signed off on an affidavit." Prosecutorial immunity does not protect lawyers who act as witnesses. A prosecutor who endorses an affidavit personally attesting to the truth of primary facts underlying a petition is not entitled to absolute immunity. *See, e.g.*, *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997).

But, with his motion for summary judgment, Harrington presents evidence that he did not act as a witness. He avers that he "did not sign or submit an affidavit from myself" or otherwise claim, in state court, that he had personal knowledge of the facts of Sanchez's case. *See* Harrington Affidavit (Doc. 32) at 2 ¶ 4. For this reason, his situation is different from that of the prosecutor in *Kalina*, who "personally attest[ed] to the truth of the averments" in the prosecutor's pleading to the court. *See* 522 U.S. at 129.

Harrington further asserts that he was not involved in Sanchez's case before he received Rash's affidavit, and he relied on Rash's averments when he made the

6

decision to petition the court and when he prepared the petition. *See id.* at 2 ¶¶ 2–3. After he presented Rash's affidavit to the state court, he persisted in litigating the case until it was eventually dismissed by a judge. *See id.* at 2–3 ¶¶ 4–5; Ex. 1 Rash Aff. (Doc. 32-1); Ex. 3 Order (Doc. 32-3).

Harrington's affidavit in support of his summary judgment motion is evidence that his involvement in Sanchez's case consisted exclusively of his decisions to initiate judicial proceedings and to represent the State as those proceedings went forward. This evidence is consistent, in fact, with the allegations in Sanchez's complaint.

In response to Harrington's motion for summary judgment, Sanchez points to no fact showing that he served any function other than initiating proceedings and representing the State. Instead, she argues that Harrington was duty-bound to ensure Rash's affidavit and the State's actions generally were fair and legal both before and throughout his involvement in the case. She also points out that Rash removed her child from her home at least a week before the earliest date Rash submitted an affidavit to Harrington, and Harrington did not initiate court action until ten days after the child's removal.[1] She contends:

The county attorney must make a decision on each affidavit & decide

---

[1] The Child and Family Services Policy Manual contains these time limitations. *See, e.g.*, Pl. Statement of Disputed Facts (Doc. 64) at 4. The Manual as it existed on September 1, 2017, is not before the Court and is not relevant to the issue. A defective initiation of judicial proceedings remains an initiation of judicial proceedings.

> which statu[t]e to utilize, what instruments & paperwork [to use] based on the social workers affidavit or person knowledge of circumstances[.] [R]efusal to file for emergency removal does not dialect [detract] from protecting children[.] [H]e could have declined to file based on the legal requirements not [being] met[, or] could have continue with services or set a hearing to decide if the judge wanted to [act.]

Pl. Resp. to Mot. for Summary Judgment (Doc. 54) at 4;[2] *see also* Sanchez Aff. (Doc. 57) at 17–18.

Sanchez accurately describes a deputy county attorney's duties and choices. But all these decisions and choices are protected by absolute prosecutorial immunity, whether they are right or wrong, fair or unfair, timely or untimely, negligent or reckless or scrupulously correct.

### 4. Conclusion

Harrington presents evidence that his only role in Sanchez's case was to litigate and advocate for the State. Sanchez presents no evidence to the contrary. As a matter of law, Harrington is entitled to prosecutorial immunity. His motion for summary judgment should be granted.

## II. Defendant McCullough's Motion to Dismiss

Defendant Laura McCullough moves for dismissal based on Plaintiff Sanchez's email indicating that she wants to dismiss McCullough. Sanchez did not

---

[2] Throughout this Order, brackets within quoted language are intended to clarify what the Court understands Sanchez to say.

respond to McCullough's motion, but she stated in a pleading directed to the Court that she "would like to remove Laura McCullough from the defendants as she did her job." Mot. to Amend (Doc. 20) at 2.[3] McCullough's motion should be granted, and she should be dismissed.

### III. Defendant Fridel's Motion for Judgment on the Pleadings

Defendant Chris Fridel moves for judgment on the pleadings. He asserts that Sanchez's allegations, taken as true, fail to state a claim on which relief may be granted. More specifically, he contends that he was not a "state actor"; that Sanchez does not adequately allege he violated a specific constitutional right; and that, if her allegations are adequate to show he is a "state actor," he is entitled to qualified immunity.

#### A. Rule 12(c) and 12(b)(6) Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A defendant's answer may call attention to a defense that is "built in" to the complaint, *see, e.g.*, *United States v. Rogers Cartage Co.*, 794 F.3d 854, 860–61 (7th Cir. 2015); *Jardin De Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 132 (1st Cir. 2014), as Fridel's motion suggests is

---

[3] This document was filed after Sanchez had already filed an amended complaint. Judge Watters construed its allegations as objections to a then-pending Findings and Recommendation. *See* Order (Doc. 24) at 3–4 ¶ 2.

the case with respect to qualified immunity. Although there are two pleadings rather than one to review, a Rule 12(c) motion remains "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Cafasso v. Gen'l Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, the same legal standard "applies to motions brought under either rule." *Id.*

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial

experience and common sense in evaluating a complaint.  *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

The Court notes that it has not considered Sanchez's exhibits (Doc. 56) or her affidavit (Doc. 57) in connection with Fridel's motion.  A district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) or 12(c) motion without converting the motion into one for summary judgment.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

### B.  42 U.S.C. § 1983 Action Against a Private Party

42 U.S.C. § 1983 provides a cause of action against a person who, "under color of" state law, deprives another of rights secured by the Constitution.  "It is well established that private parties who act in concert with officers of the state are acting under the color of state law within the meaning of section 1983."  *Evans v. McKay*, 869 F.2d 1341, 1348 (9th Cir. 1989).

Sanchez's original complaint alleged violations of her "right to parent without State interference" and her right "not to be searched w/out warrant [or] seized illegally," citing both the Fourteenth and the Fourth Amendment.  *See* Compl. (Doc. 2) at 6.  In a section headed "Defendants Involved," *see id.* ¶ IV(A)(4), she alleged:

> Ceirra rash forced entry to my home of [sic] chris friedel refused to have him leave . . . .
> . . .

11

> Chris fridel . . . gained entry to my home[4] during investigation and refused to leave my home when I was not comfortable with him there I am now forced to do drug patches through same company.

*Id*. at 13.  And in a section headed "Supporting Facts," *see id*. ¶ IV(A)(3), she alleged:

> On September 1st 2017 Child protective services showed up at my home.
> Ceirra Rash said the dept has concerns we need to address right now.  Ceirra had a man with her not from the dept I told her I was not discussing anything in front of the man lat[]er known to me as chris fridel with fridel llc.
> Ceirra entered my home on the premise that she had to I had no choice or removal would happen.
> . . .
> She then brought Chris Friedel into my home after I said I did not want him in my home she then said he was there for her protection I told them that if she felt unsafe she needed to leave my home and I was not handing my son over with out a warrant based on allegations.

Compl. (Doc. 2) at 14, 15, 16.

On March 21, 2019, the Court advised Sanchez that her original complaint's allegations against Chris Fridel and Fridel LLC did not state a claim for relief under 42 U.S.C. § 1983.  She was given an opportunity to amend her complaint to address the defect.  *See, e.g.*, *Akhtar v. Mesa*, 698 F.3d 1201, 1212 (9th Cir. 2012).  She was required only to allege facts, if she knew of any, pertinent to her claims against Fridel, not to re-plead her allegation of Fourth and Fourteenth Amendment

---

[4] Sanchez says "Chris fridel and fridel llc" gained entry to her home, but Fridel LLC was not named as a defendant in this action.

violations. *See* Order (Doc. 15) at 3–4.

In her amended complaint, filed April 11, 2019, Sanchez alleged, in part:

When I opened my door to the initial contact with Cierra rash and Chris Friedel I was told "THEY" needed to speak to me[.] Chris Friedel never once acted as a separate entity or private citizen he was dressed in combat style clothing and acting as if he had Montana state authority to be where he was. Chris Friedel intent was to "prove drug use" on me in order to assist the state in removal of my child and in order to gain state funding if the removal happened. And when I refused fridells the state took my son not based on the state but based on fridels as well. Chris Friedel illegally entered my private residence even after I clearly closed the door and said he could not enter based on his right to do so since his [he's] part of the cps and there [their] team. Chris Friedel stood in my home as a way to fully assist the state in their investigation and to be a witness for court for the states behalf to gain revenue for their llc. Chris Friedel refused to leave my residence and stood in my pathway to my door way to intimidate me and to "gather evidence for Cierra and be Cierra's proof for court and her personal security[.]" Chris Friedel stood in a manner that didn't allow me to walk freely out of my own home and he clearly stated "he was there with and for the dept." When I told him this was a private matter and he needed to leave my residence Chris Friedel refused even though he gained entry illegally and without consent while claiming to be the states "security" "protection" and evidence gathering for court. He made statements on behalf of himself and Friedel llc him and Cierra conquered [concurred] that he was there to "testify against me as a witness for the state's case." Friedel works directly with the state and represents themselves as authority of the state . . . . Friedel made it very clear they were not acting as a neutral private citizen or simply standing by their entire purpose was revenue based and to gather evidence to prosecute me.

Am. Compl. (Doc. 16) at 7, *cited in part in* Def. Fridel Br. in Supp. of Mot. to

Dismiss (Doc. 50) at 3.

13

Fridel contends that these allegations do not state a viable claim. Citing *Franklin v. Fox*, 312 F.3d 423, 446 (9th Cir. 2002), Fridel asserts that Sanchez must show he directed action by the State. The case is inapposite. Franklin complained of constitutional violations at his criminal trial. He sought to hold his daughter liable for those violations because she reported him to the police and attempted to assist in the investigation. The temporal connection between the private party's acts and the constitutional violation was attenuated, and there was no indication that the prosecutors and Franklin's daughter agreed to work together. *See id.* at 445.

Here, by contrast, Sanchez alleges that Rash and Fridel together carried out an unreasonable search. According to Sanchez, Rash said Fridel was there on her behalf, and Fridel said he was acting on Rash's behalf. The *Franklin* court acknowledged that "[a] plaintiff may demonstrate joint action . . . by showing that the private party was a willful participant in joint action with the State or its agents." 312 F.3d at 445 (internal quotation marks omitted). That is what Sanchez alleges. *See also, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."); *United States v. Price*, 383 U.S. 787, 794 (1966) ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in

joint activity with the State or its agents.").

Sanchez alleges that Fridel acted in concert with Rash and stated he was doing so. She claims that he entered her home unlawfully, refused to leave when asked, attempted to gather evidence, and intimidated her. A lawyer might have used different phrasing, such as saying Fridel "unlawfully *and unreasonably* entered and remained in her home" and "searched" for or "seized" evidence rather than "gathering" it. But the facts Sanchez alleges, combined with her complaint's reference to the Fourth and Fourteenth Amendments, plausibly support an inference that Fridel acted under color of state law and violated Sanchez's Fourth Amendment right to be free of unreasonable searches and her Fourteenth Amendment right to parent.

### C. Qualified Immunity

Private persons who are "hired by the government to do its work," *Filarsky v. Delia*, 566 U.S. 377, 380 (2012), and who are "principally concerned with enhancing the public good," *id.* at 392, are protected by qualified immunity, even if they are not permanent or full-time government employees. But private persons are not protected by qualified immunity if they "us[e] the mechanisms of government to achieve their own ends." *See id.* at 392 (describing *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)).

Sanchez does not allege that a government entity retained Fridel to accompany Rash or that Fridel was "principally concerned with enhancing the public good." *Filarsky*, 566 U.S. at 392. She specifically alleges Fridel had a pecuniary interest in a drug-testing business and his "intent was to 'prove drug use' on me in order to assist the state in removal of my child and in order to gain state funding if the removal happened." Am. Compl. (Doc. 16) at 7.

Further, Sanchez alleges that Rash and Fridel ignored her protestations and entered and remained in her home against her will in order to look for evidence to use against her in court. She does not allege facts showing they had a warrant, *see, e.g.*, *Payton v. New York*, 445 U.S. 573, 590 (1980), or had both probable cause and exigent circumstances, such as the need to prevent the destruction of evidence, *see, e.g.*, *Kentucky v. King*, 563 U.S. 452, 460 (2011), or that they reasonably believed they needed to give emergency aid, *see, e.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). All reasonable officers would agree the Fourth Amendment prohibits entering and remaining in a person's home without consent or qualifying emergent circumstances.

On the face of the pleadings, Fridel is not entitled to qualified immunity. *See Wyatt*, 504 U.S. at 168–69. Through discovery or trial, the parties may prove facts that would support qualified immunity, but the pleadings do not.

### D. Conclusion

Sanchez fairly states a claim against Fridel on which relief may be granted. Her allegations do not show that he is protected by qualified immunity. His motion for judgment on the pleadings should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. Harrington's motion for summary judgment (Doc. 29) should be GRANTED.

2. Defendant McCullough's motion to dismiss (Doc. 46) should be GRANTED.

3. Fridel's motion for judgment on the pleadings (Doc. 49) should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1).[5] Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[5] This deadline allows a party to act within 14 days after the Findings and Recommendation is "served." Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.

Plaintiff must immediately advise the Court of any change in her mailing or email address.  Failure to do so may result in dismissal of the action without notice to her.

DATED this 15th day of October, 2019.

>         */s/ Timothy J. Cavan*
> Timothy J. Cavan
> United States Magistrate Judge